**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN CALHOUN,<br><br>Defendant. | Case No. 21-cr-02909-BAS-3<br>Case No. 25-cv-03486-BAS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF No. 479)[1]** |

Pursuant to the Plea Agreement, Defendant Stephen Calhoun pled guilty to one count of RICO conspiracy, two counts of Hobbs Act robbery, and one count of using/brandishing a firearm in relation to a crime of violence. (ECF No. 482.) The Court sentenced him to 176 months in custody. (ECF No. 486-1, Ex. 2.)

Defendant now files a Motion seeking to vacate his conviction under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. (ECF No. 479.) Defendant argues that his attorney was ineffective, first, for failing to argue for a youthful offender

---

[1] All Electronic Case Filing references are to the docket in Case No. 21-cr-02909-BAS-3.

– 1 –

adjustment at sentencing and, second, for advising him that he would do no more than five years in custody and would get credit for the time he had spent in state custody. (*Id.*) The Government responds. (ECF No. 486.) For the reasons stated below, the Court **DENIES** the Motion.

I.    BACKGROUND

In the first six months of 2019, Defendant and a group of his cohorts from the Lincoln Park Bloods gang ("LPK") committed a series of violent robberies. According to Defendant's admissions during his guilty plea, he participated in three robberies in support of his allegiance to LPK: two jewelry stores in which he smashed glass jewelry cases and clerks were threatened with weapons, and one medicine shop in which a codefendant held the clerk at gunpoint while Defendant jumped over the counter and stole prescription bottles. In each robbery, Defendant admitted he knew in advance that his co-conspirator would be armed to carry out the robbery. (ECF No. 392, at § II.B.) The store clerk victims provided statements about the trauma they had suffered because of the robberies. (Pre-Sentence Report ("PSR") ¶¶ 53–60, ECF No. 412.)

During this time period, also as part of his gang activity, Defendant and two of his codefendants assaulted an individual, demanding, "Where you from?" while proclaiming, "We from Lincoln." (Pre-Sentence Report ¶¶ 30–33.) Defendant was convicted of assault by means likely to produce great bodily injury in state court for this conduct, was sentenced to four years, and spent 30 months in state custody before he was turned over to the federal authorities for prosecution on this case. Assault by means likely to produce great bodily injury is not a predicate act for the federal RICO charge.

Despite Defendant's young age at the time of the offense (18 years), he had managed to rack up a lengthy criminal record as a juvenile. In 2014, a true finding was made with respect to grand theft, tampering with a vehicle, and possessing burglary tools. In 2015, there was a true finding for resisting an officer. In 2016,

– 2 –

there was a true finding for car theft and burglary, and in 2017, there was a true finding for assault with a deadly weapon.  (PSR ¶¶ 104–13.)

Defendant and the Government reached a plea agreement, in which Defendant agreed to plead guilty to the RICO conspiracy, two of the Hobbs Act robbery counts, and one count of using/brandishing a firearm in relation to a crime of violence.  (ECF No. 392.)  For this last charge, Defendant faced a mandatory minimum sentence of seven years in custody, consecutive to any other term of imprisonment.  (*Id.*)  In exchange, the Government agreed to dismiss two other counts of using/brandishing a firearm in relation to a crime of violence, which would have increased Defendant's sentence by an additional mandatory minimum of seven years for each count, for a total mandatory minimum sentence of twenty-one years, again consecutive to the underlying sentence for the conspiracy and robberies.  (*Id.*)

Defendant signed a written Plea Agreement in which he acknowledged that for the count of using/brandishing a firearm, he faced a mandatory minimum custodial term of seven years and a maximum term of life in prison.  (ECF No. 392, at § III.) He agreed that this prison term would be consecutive to any other term of imprisonment imposed and that he was facing a maximum custodial term of 20 years for the other three counts to which he was pleading guilty.  (*Id.*)

In the Plea Agreement, Defendant averred that no one had made any promises to him other than those in the Plea Agreement.  (*Id.* at § VI.B.)  And finally, an entire section of the Plea Agreement was devoted to discussing the fact that the ultimate sentence was within the sole discretion of the Judge:

> The Government has not made and will not make any representation as to what sentence Defendant will receive.  Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise and is **not binding on the Court.**

(*Id.* § XI (emphasis in original).)

At his guilty plea hearing, the Magistrate Judge asked whether Defendant had read the entire Plea Agreement or had it read to him, to which he responded, "Absolutely." (ECF No. 486-1, Ex. 1, at 4:15–17.)  He was also told again by the Magistrate Judge that he was facing a mandatory minimum sentence of seven years and a maximum of life in custody, consecutive to any other term of imprisonment, and Defendant said he understood. (*Id.* 9:6–15.)  The Magistrate Judge confirmed that the District Judge can impose the maximum sentence and does not have to follow the Plea Agreement, and Defendant said he understood. (*Id.* 12:5–12.)  Finally, Defendant said no one had promised him anything other than what was in the Plea Agreement and that he was satisfied with the representation of his attorney. (*Id.* 13:4–9, 14:20–23.)

At sentencing, during his colloquy, Defendant made a pitch for a lower sentence because of his youth and for credit for the time he had spent on his state sentence. (ECF No. 486-1, Ex. 2, at 7:7, 15.)  The Court agreed that Defendant should receive some consideration for the fact that he was "very young at the time" he committed the offense. (*Id.* 13:18–21.)  But the Court disagreed that Defendant's sentence should be reduced 30 months for the time he had spent in custody on the state court conviction, explaining that Defendant's conviction for assault was a totally separate act from the three jewelry store/medicine shop robberies and that assault did not count as a RICO activity. (*Id.* 11:4–11.)

In Defendant's Sentencing Memorandum, defense counsel recommended a sentence of 117 months, but at the sentencing hearing, defense counsel amended that to 108 months or 9 years in custody. (*Id.* 5:3; ECF No. 433.)  The Government recommended a sentence of 180 months or 15 years. (ECF No. 431.)  Ultimately, the Court sentenced Defendant to a total of 176 months, finding "despite the fact that you were only 18, you seem to have managed to chalk up a pretty lengthy record of violent crime . . . you're basically terrorizing the neighborhood and [these crimes were] particularly egregious." (ECF No. 486-1, Ex. 2, at 13:18–21.)

## II.    ANALYSIS

"[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)).  Even in a claim of ineffective assistance of counsel in a guilty plea, Defendant must meet the *Strickland* test; that is, he must show, first, "that counsel's assistance was not within the range of competence demanded of counsel in criminal cases," and second, that he suffered actual prejudice as a result of this incompetence. *Lambert*, 393 F.3d at 979–80; *Hill*, 474 U.S. at 57–58.

"A deficient performance is one in which counsel made errors so serious that []he was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987).  The court should not view counsel's actions through "the distorting lens of hindsight." *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)).

In order to satisfy the second "prejudice" prong in a guilty plea case, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  A plea agreement and advisement by the judge taking the guilty plea alerting the defendant to the potential consequences of his guilty plea can cure an attorney's faulty prediction about a defendant's likely sentence. *Womack v. Del Papa*, 497 F.3d 998, 1003 (9th Cir. 2007).

Thus, in *Dognaniere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990), the Ninth Circuit found the district court properly denied a motion to vacate for

ineffective assistance of counsel where the petitioner claimed his attorney told him he would receive a sentence of not more than 12 years in custody, but the court sentenced him to 15 years. The court explained that the petitioner "suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court." *Id.*; *accord United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990) (explaining that an erroneous sentencing prediction "does not entitle a defendant to challenge his guilty plea" where the defendant was advised the court was not bound by the sentencing agreement).

In this case, Defendant first claims that his attorney failed to argue for a youthful offender adjustment at sentencing.  However, Defendant himself raised the issue of his youth.  The Court then took into consideration that Defendant was "very young at the time" he committed the offense, but the Court ultimately found that "despite the fact that you were only 18, you seem to have managed to chalk up a pretty lengthy record of violent crime.  You're basically terrorizing the neighborhood and [these crimes were] particularly egregious." (ECF No. 486-1, Ex. 2, at 13:18–21.)  Since the Court considered Defendant's youth at the time of sentencing, Defendant cannot show any prejudice from his attorney's failure to raise this issue.

Second, Defendant claims that his attorney promised that Defendant would receive no more than five years in custody and that he would get credit for the time he spent in state custody.  Defendant's defense counsel rebuts this claim.  (ECF No. 486-1, Ex. 3, ¶ 5.)  The Court finds Defendant's claim that his attorney told him he would do no more than five years in custody to be patently incredible.  Defendant was told on multiple occasions that he was facing at least a seven-year mandatory minimum sentence on top of the sentence for the underlying offenses, and each time, Defendant stated he understood. (ECF No. 392, at § III; ECF No. 486-1, Ex. 1, at 4:15–17, 9:6–15.)  Additionally, Defendant repeatedly said that no one had promised

– 6 –

him anything other than what was in the Plea Agreement. (ECF No. 392, at § VI.B; ECF No. 486-1, Ex. 1, at 4:15–17, 13:4–9, 14:20–23.)

Even if Defendant is to be believed that his attorney told him he would receive no more than five years and that he would get credit for the time he spent in state custody, he cannot show prejudice. Throughout his guilty plea, Defendant was told that the ultimate sentence would be decided by the Court and that the Court was not bound by the Plea Agreement. (ECF No. 392, § XI; ECF No. 486-1, Ex. 1, at 4:15–17, 12:5–12.) Thus, any faulty prediction by his defense counsel was cured by both the written Plea Agreement and the advisements made during his guilty plea.

## III.    CONCLUSION

For the reasons stated above, Defendant's Motion to Vacate Under 28 U.S.C. § 2255 (21-cr-02909-BAS-3, ECF No. 479) and the Petition filed (25-cv-03486-BAS) are **DENIED**. The Clerk of Court shall close the civil companion case in 25-cv-03486-BAS.

**IT IS SO ORDERED.**

DATED:  March 9, 2026

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**